**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

Daniel Louis McReynolds            :
     Petitioner/Defendant,          :
                          :
vs.                                :      Civil Action No. 13-00578-WS
                          :
United States of America,          :      Criminal No. 12-00051-WS-N
     Respondent.                    :
                          :

## Report and Recommendation

Daniel Louis McReynolds, originally proceeding *pro se*, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2255 in his Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 220).  In the course of reviewing the pleadings, it was determined that an evidentiary hearing was necessary, and hearing was conducted by the undersigned United States Magistrate Judge on February 26, 2015.  Present at the hearing were McReynolds; William Scully, Jr., Esq., a member of this Court's CJA panel and appointed counsel for McReynolds; and Special Assistant U.S. Attorney Dominic Rossetti, counsel for the Respondent United States of America.

    This action is now before the undersigned for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b) of the Rules Governing Section 2255 Proceedings.  For the reasons explained herein, it is

**RECOMMENDED** that McReynolds's petition be **DENIED** and that the Court find that he is not entitled to a certificate of appealability and is therefore not entitled to appeal *in forma pauperis*.

I.      **Procedural Background.**

In February 2012, McReynolds was charged in a 17-count indictment, along with several codefendants, with a variety of distribution related drug charges involving marijuana and cocaine.  (See Doc. 14).   The court appointed Arthur T. Powell, III, as counsel to represent McReynolds in the matter (doc. 8), and, with the assistance of his counsel, McReynolds plead guilty to count 11 of the indictment, possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) (doc. 142), and was subject to the penalty provisions of 21 U.S.C. § 841(b)(1)(C), including a 20-year maximum sentence.  (Doc. 174 at 1).   The signed factual resume incorporated by reference into the written plea agreement stated:

> On December 16, 2009, the Selma Police Department used a confidential informant to purchase approximately 26.51 grams of crack cocaine from the defendant in Selma, Alabama.  The defendant entered the informant's vehicle to conduct the transaction.   The informant paid the defendant $1,200 for the crack cocaine.
>
> The defendant has been selling crack cocaine, cocaine and marijuana in Selma since at least 1995.  The defendant agrees that over the course of the charged conspiracy in this case the defendant conspired to distribute in excess of 8.4 kilograms of crack cocaine and the defendant expressly agrees to be held accountable for this amount of crack cocaine for purposes of relevant conduct in this case.  The defendant also agrees that he was an organizer and leader of criminal activity involving 5 or more participants and was otherwise extensive in accordance with U.S.S.G. § 3B1.1(a).

(Doc. 142 at 11).  Chief District Judge William Steele conducted a guilty plea hearing on September 26, 2012, where McReynolds testified under oath that he "fully understood the terms and conditions of the plea agreement and the factual resume, and that [he] agree[d] with it."  (Doc. 220-1 at 7).  Further McReynolds acknowledged that he understood that by pleading guilty he was admitting to the elements of the offense as charged by the

government and was waiving his right to require the government to prove each element beyond a reasonable doubt at trial.  (Doc. 220-1 at 12-13).  Judge Steele then accepted McReynolds' guilty plea to count 11 and found him guilty as charged. (Id. at 13).

Prior to sentencing, the U.S. Probation Office prepared a Presentence Investigation Report (doc. 174).  Applying the drug quantity table, the PSR noted McReynolds' base offense level would be set at 38 based on his admission that he was involved with the distribution of more than 8.4 kilograms of crack cocaine.[1]  (Doc. 174 at 12).  The base level was enhanced two points for the use of a weapon, two more points for the use of violence or directing the use of violence, another two points for intimidating a witness or obstructing justice in connection with the investigation, and it was increased by four points for McReynolds' participation as an organizer or leader of criminal activity.  (Doc. 174 at 12-13).  McReynolds then received a reduction of three points for timely acceptance of responsibility, giving him a total offense level for sentencing purposes of 43 and a criminal history score of I.  (Id. at 13-14).  The PSR computed a guideline for life imprisonment for McReynolds; whereas, the statutory maximum sentence was 20-years imprisonment.  (Doc. 174 at 17).  Therefore, based on the United States Sentencing Guidelines § 5G1.1(a), "the statutorily authorized maximum sentence [of 20-years imprisonment was used as] the guideline sentence."  (Id.).  McReynolds originally objected to the enhancements included in the PSR for: the use of a firearm, threat to use violence or directing the use of violence, and witness intimidation

---

[1]       Pursuant to the drug quantity table found at U.S.S.G. § 2D1.1(c)(1), violations of 21 U.S.C. § 841 involving at least 8.4 kilograms or more of cocaine base drugs corresponds to a base offense level of 38.  Again, McReynolds admitted in his factual resume and plea agreement to involvement with more than 8.4 kilograms of crack cocaine.  (Doc. 142 at 111).

or obstruction of justice in connection with the investigation or prosecution of the offense

(doc. 175 at 1), but McReynolds ultimately withdrew his objections to these

enhancements at the sentencing hearing.[2]  McReynolds' attorney explained that the

objections were withdrawn, "considering the fact that the statutory maximum is 20 years,

we don't feel that the content of the PSI is as critical as it might be in another situation."

---

[2]       On December 4, 2012, McReynolds filed a Position of Parties with Respect to Sentencing Factors objecting to three two-level enhancements that increased his base level offense by six levels.  (Doc. 175 at 1).  The probation office supported its report, including the enhancements, stating that "[b]ased on the discovery provided, the defendant provided Earnest Johnson with a .38-caliber pistol and instructed Johnson to kill a female confidential informant, who he believed was involved in a drug investigation on him.  The government advised the probation officer that they have evidence to support this information.  Therefore, the aforementioned upward adjustments in paragraphs 60, 61, and 62 were appropriately applied, and the presentence report remains unchanged."  (Id.).  During the sentencing hearing the following exchange occurred:

> THE COURT:          I note that there were some objections filed to the Presentence Report.  Mr. Powell, do you want to be heard on those at this time?
> MR. POWELL:          No, Your Honor.  If I might, after discussing the objections with my client and the consequences of those objections, we have decided to withdraw those.
> THE COURT:          All right.  Are there any other matters that we need to take up with regard to the content of the Presentence Report at this time, Mr. Powell?
> MR. POWELL:          No, sir.
> . . .
>
> THE COURT:          . . . All right.  Mr. Powell, you have anything you want to present on Mr. McReynolds' behalf before sentence is imposed?
> MR. POWELL:          . . . Mr. McReynolds does specifically deny any involvement in any homicide as related in the Presentence Report in the statements of other individuals.  But other than that, we have nothing to add.
> THE COURT:          All right.  Mr. McReynolds, you have anything you want to say before sentence is imposed?
> DEFENDANT:          No, sir.

(Doc. 220-3 at 3-5).

(Doc. 220-3 at 4).  The Court subsequently adopted the PSR as published by the

probation office.  (Id. at 3).  And, on January 31, 2013, Judge Steele sentenced

McReynolds to the statutory guideline of 240 months.  (Id. at 6).  McReynolds did not

file a notice of non-appeal, notice of appeal, nor did he directly appeal his conviction or

sentence.  (Doc. 210 at 22-29).

McReynolds timely filed the current habeas petition on November 22, 2013, and

an amended petition on August 14, 2014, alleging: (1) ineffective assistance of counsel

for failing to file a notice of appeal; (2) ineffective assistance of counsel for not procuring

a Rule 11(c)(1)(c) plea agreement as requested; (3) ineffective assistance of counsel for

failing to present mitigating factors at sentencing; (4) improper enhancement of sentence;

(5) improper use of information from codefendants' sentencing in Petitioner's sentencing;

and (6) ineffective assistance of counsel for failing to object to the court's usage of the

codefendants' sentencing information.  (See Docs. 210, 227).

## II.   Legal Standards.

### a.   Habeas Standard.

Habeas relief is an extraordinary remedy which "may not do service for a[ ]

[direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d

816 (1982); see also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004)

("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255

motion, may not be a surrogate for a direct appeal.").  A defendant who has waived or

exhausted his right to appeal is presumed to stand "fully and finally convicted." Frady,

456 U.S. at 164.  The scope of collateral attack has remained extremely limited. "At least

where there has been no intervening change in controlling law, a claim or issue that was

decided against a defendant on direct appeal may not be the basis for relief in a § 2255 proceeding." <u>Rozier v. United States</u>, 701 F.3d 681, 684 (11th Cir. 2012) (citations omitted).

It is black-letter law that "section 2255 generally cannot be used to challenge an issue that the defendant could have raised on direct appeal but failed to." <u>Spencer v. United States</u>, 727 F.3d 1076, 1091 (11th Cir. 2013) (citations omitted).  Thus, "[u]nder the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." <u>McKay v. United States</u>, 657 F.3d 1190, 1196 (11th Cir. 2011) (citation omitted).  A defendant's procedural default can be excused under one of two exceptions: "(1) for cause and prejudice, or (2) for a miscarriage of justice, or actual innocence." <u>Id</u>.  "Under the cause and prejudice exception, a § 2255 movant can avoid application of the procedural default bar by showing cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." <u>Id</u>. (citation and internal marks omitted).

**b.   Ineffective Assistance of Counsel Claims and Strickland Standard.**

McReynolds has asserted six grounds for relief.  Four of those grounds are claims of ineffective assistance of counsel.  To establish his claims of ineffective assistance of counsel, McReynolds is required to show both that his attorney's representation fell below "an objective standard of reasonableness"—the "performance prong"—and that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different—the "prejudice prong." <u>See generally</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  He

"bears the burden of proof" as to both prongs "and both prongs must be proved to prevail." Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001), *cert. denied sub nom*. Johnson v. Nagle, 535 U.S. 926, 122 S. Ct. 1295, 152 L. Ed. 2d 208 (2002); *accord* Cooper v. Sec'y, Dep't of Corr., 646 F.3d 1328, 1351 (11th Cir. 2011).

To succeed on the performance prong, McReynolds "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. "When analyzing ineffective-assistance claims, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Smith v. Singletary, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted); *accord* Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005). That "presumption of reasonableness is even stronger when we are reviewing the performance of an experienced trial counsel." Callahan v. Campbell, 427 F.3d 897, 933 (11th Cir. 2005). As the Supreme Court has explained,

> "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S. at 689-90. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id. at 689. The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. Id. at 690.

Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 788, 178 L. Ed. 2d 624 (2011) (some internal citations modified or omitted); see also Pair v. Cummins, 373 Fed. App'x 979, 981-82 (11th Cir. Apr. 20, 2010) (per curiam) ("The performance prong['s] . . . standard is that of a reasonable attorney, not a 'paragon of the bar' or an 'Aristotle' or a 'Clarence Darrow.'" (quoting Dill v. Allen, 488 F.3d 1344, 1354 (11th Cir. 2007); Yarborough v. Gentry, 540 U.S. 1, 11, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003))); Gonzalez v. United States, Nos. 09-22386-Cv- JORDAN; 07-20759-Cr-JORDAN, 2010 U.S. Dist. LEXIS 58456, 2010 WL 2367356, at *5 (S.D. Fla. Apr. 21, 2010) ("The court's role in reviewing ineffective assistance of counsel claims is not to 'grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within 'wide range of professionally competent assistance.'" (quoting Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318, 1322 (11th Cir. 2002))), *report and recommendation adopted*, 2010 U.S. Dist. LEXIS 58563, 2010 WL 2366531 (S.D. Fla. June 14, 2010).

"The test for [deficiency, moreover,] is not whether counsel could have done more; perfection is not required.  Nor is the test whether the best criminal defense attorneys might have done more." Waters v. Thomas, 46 F.3d 1506, 1518 (11th Cir. 1995) (en banc).  Rather, the inquiry under Strickland is limited to "whether some reasonable lawyer could have acted, in the circumstances, as defense counsel acted . . . ." Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004) (quoting Waters, 46 F.3d at 1518); see also Moreno v. United States, Criminal No. 1:06-CR-461-CC- GGB; Civil Action No. 1:10-CV-0164-CC-GGB, 2012 U.S. Dist. LEXIS 187470, 2012 WL 7829200, at *4 (N.D. Ga. Mar. 13, 2012) ("The test [for deficiency] has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have

done. We ask only whether some reasonable lawyer . . . could have acted, in the

circumstances, as defense counsel acted . . . ." (quoting White v. Singletary, 972 F.2d

1218, 1220 (11th Cir. 1992))), *report and recommendation adopted*, 2013 U.S. Dist.

LEXIS 46938, 2013 WL 1339718 (N.D. Ga. Apr. 1, 2013); id. ("[Petitioner must

demonstrate that 'no competent counsel would have taken the action that his counsel did

take.'" (quoting United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003))).

And, in order to avoid "the distorting effects of hindsight," a habeas court must

"evaluate the reasonableness from counsel's perspective at the time of the alleged error in

light of all circumstances of the case." Griffin v. United States, 204 Fed App'x 792, 794-

95 (11th Cir. Oct. 25, 2006) (per curiam) (citing Strickland, 466 U.S. at 690).  Likewise,

"[t]actical decisions regarding trial strategy are left to the sound judgment of counsel and

are entitled to a 'strong presumption' of competence." Kearney v. United States, Nos.

2:04-CR-15-1-BO; 2:09-CV-55-BO, 2010 U.S. Dist. LEXIS 58893, 2010 WL 2402887,

at *2 (E.D.N.C. June 14, 2010) (quoting Strickland, 466 U.S. at 689, and citing Bell v.

Cone, 535 U.S. 685, 698, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002)).  For a petition

challenging chosen trial strategies to be successful, therefore, it must not be "devoid of

the factual basis that is required to show that counsel's tactics were manifestly

unreasonable." Id.

In addition, McReynolds "must affirmatively prove prejudice" to succeed on an

ineffective assistance of counsel claim. Butcher v. United States, 368 F.3d 1290, 1294, 95

Fed. App'x 1290 (11th Cir. 2004). "[T]hat the errors had some conceivable effect on the

outcome of the proceeding" is insufficient to show prejudice. Gilreath v. Head, 234 F.3d

547, 551 (11th Cir. 2000) (alteration in original) (quoting Strickland, 466 U.S. at 693);

see also Evans v. Sec'y, Fla. Dep't of Corr., 699 F.3d 1249, 1270 (11th Cir. 2012) (under

Strickland, "a court making the prejudice inquiry must ask if the defendant has met the

burden of showing that the decision reached would reasonably likely have been different

absent the errors," and that "[t]he likelihood of a different result must be substantial, not

just conceivable" (citations omitted)).

 Finally, when applying the Strickland standard, it is clear that courts "are free to

dispose of ineffectiveness claims on either of its two grounds." Oats v. Singletary, 141

F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom.* Oats v. Moore,

527 U.S. 1008, 119 S. Ct. 2347, 144 L. Ed. 2d 243 (1999); see also Butcher, 368 F.3d at

1293 ("[O]nce a court decides that one of the requisite showings has not been made it

need not decide whether the other one has been.").

**III. Analysis.**

 Claim 1.

 McReynolds maintains that counsel rendered ineffective assistance in failing to

file a notice of appeal.  The law is well-settled, of course, that "an attorney who fails to

file an appeal on behalf of a client who specifically requests it acts in a professionally

unreasonable manner per se" and that "[t]o satisfy the prejudice prong of the Strickland

test, a defendant who shows that his attorney has ignored his wishes and failed to appeal

his case need only demonstrate that, but for the attorney's deficient performance, he

would have appealed."  Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005)

(citations omitted).  The same principles apply even when the petitioner, as here, has

signed a partial appeal waiver. "If the evidence establishes … that Petitioner's attorney

acted contrary to his client's wishes, … prejudice is presumed, and Petitioner is entitled to

an out-of-time appeal, regardless of whether he can identify any arguably meritorious

grounds for appeal that would fit one of the exceptions contained in his appeal waiver."

Gomez-Diaz, 433 F.3d. at 793.

> Even if no request to appeal is made, counsel is obligated to consult with
> his client if either "a rational defendant would want to appeal" or the client
> has "reasonably demonstrated to counsel that he [i]s interested in
> appealing." Flores-Ortega, 528 U.S. at 479. To satisfy the consultation
> obligation when it arises, counsel must "advis[e] the defendant about the
> advantages and disadvantages of taking an appeal and mak[e] a reasonable
> effort to discover the defendant's wishes." Id. at 478. If counsel has a duty
> to consult but fails to satisfy it, his deficient performance is established,
> and the defendant establishes resulting prejudice by showing that, but for
> counsel's failure to consult, he would have appealed. Gomez-Diaz, 433
> F.3d at 792.

> Relevant factors in determining if a rational defendant would want to
> appeal include: (1) "whether the conviction follows a guilty plea"; (2)
> "whether the defendant received the sentence he bargained for"; (3)
> "whether the plea [agreement] expressly . . . waived some or all appeal
> rights"; and (4) whether there are "nonfrivolous grounds for appeal." Otero
> v. United States, 499 F.3d 1267, 1270-71 (11th Cir. 2007) (internal quotes
> omitted).

Andrews v. United States, 2010 U.S. Dist. LEXIS 114903, 3-4, 2010 WL 4269155 (S.D.

Ala. Oct. 5, 2010) (quoting Gavin v. United States, 2009 U.S. Dist. LEXIS 20592, 2009

WL 692046, *1-2 (S.D. Ala. Mar. 13, 2009).

In response to Petitioner's claim, the Government submitted the affidavit of

Petitioner's counsel, Arthur T. Powell, III, who denied that Petitioner ever asked him to

appeal. (Doc. 220-2 at 1). According to Powell, "following the imposition of sentencing

[he] explained to Mr. McReynolds his appellate rights and he indicated specifically he

did not wish to appeal. At no time did Mr. Reynolds ever request that [Powell] file notice

of appeal on his behalf." (Id.).

On February 26, 2015, the Court conducted an evidentiary hearing to resolve the conflict in the evidence regarding Petitioner's purported instructions to Powell to file a notice of appeal.  At the evidentiary hearing, McReynolds testified that he asked Powell to file an appeal on his behalf. According to McReynolds, Powell responded to this request by explaining that he should not file a notice of appeal because a new trial could result in more, not less, prison time. McReynolds says that he requested that Powell at least file a notice of appeal.

Powell testified to a different set of facts at the evidentiary hearing, saying that he explained both before and after sentencing McReynolds's limited rights of appeal under the plea agreement. Powell testified that after sentencing, he explained that McReynolds still had the right to appeal, but that his chances of success were very poor, and asked McReynolds if he wanted to appeal. Powell says that McReynolds indicated that he did not want to file an appeal.

Powell has over 30 years of criminal practice in state and federal courts and is a member of this Court's CJA panel of attorneys.  Powell testified that his usual practice is to read the plea agreement to his client word for word and explain in layman's terms the meaning of the legal terminology.  Powell testified that he followed this procedure with McReynolds.  He further testified that he explained to McReynolds many times that he faced a likelihood of a life sentence.

While the accounts given by McReynolds and his counsel at the evidentiary hearing are materially conflicting, the Court has had full opportunity to observe the demeanor of the parties and make necessary credibility determinations.  Having done so and having reviewed the record, the Court credits the testimony of Arthur Powell.  Powell

testified that he told McReynolds and his family that he would be sentenced to 20 years imprisonment, and McReynolds was sentenced as expected.  As such, McReynolds's claim that he told Powell to appeal is not credible.

In light of the foregoing, the Court finds that Powell did not prejudice his client during the appeals phase under the <u>Strickland</u> standard. Accordingly, Petitioner's Claim 1 is due to be denied habeas relief.

<u>Claim 2.</u>

Petitioner next asserts that his trial counsel informed him that, early in the case, he faced a sentencing guideline range of 87 to 108 months, and Petitioner states he informed counsel that he would plea to and "accept the range if it was in a plea agreement."  (Doc. 210 at 5).  Petitioner asserts that the government proceeded to verbally offer a plea agreement based on this range and he "informed counsel that he wanted to accept the plea and to lock in the plea meaning he wanted an 11(c)(1)(c) plea."  (<u>Id</u>.).  Petitioner, referring to himself as "Defendant" in his pleading, further contends:

> Counsel then informed defendant that the government did not have a good case and he wanted to take the case to trial.  Defendant then informed counsel during the same meeting that he wanted to take the case to trial. Defendant then informed counsel during the same meeting that he wanted to accept the plea but counsel ignored defendant's request.  Defendant is prejudiced because during the time frame of this meeting the co:conspirators [sic] had yet to proffer evidence of the 28 grams of crack cocaine defendant initially sold the informant and the murder of witness or informant had never been proffered.  Their [sic] is no evidence that the government would not have allowed defendant to accept an 11(c)(1)(c) plea (or locked in plea – in layman terms).  Counsel's advice caused defendant to miss a plea opportunity for a lesser sentence that was favorable to the defendant resulting in a sentence three times as lesser [sic] than the sentence he received. . . . Here in the instant case counsel failed to advise defendant that he could receive an upward variance if anything materialized about the case in relation to other drug crimes or violent crimes and counsel should have accepted a plea deal or sought with the

> government to determine if their [sic] were any other evidence that could
> lead defendant to a higher sentence and counsel failed to do that in this
> case.

(Id. at 5-6).

Petitioner bears the burden of proving facts in support of his claim.  Kimmelman
v. Morrison, 477 U.S. 365, 106 S. Ct. 2574, 2588, 91 L. Ed. 2d 305 (1986) ("Counsel's
competence … is presumed, and the [petitioner] must rebut this presumption by proving
that his attorney's representation was unreasonable under prevailing professional norms
and that the challenged action was not sound strategy.") (citations omitted).  Unsupported
conclusory allegations do not warrant habeas relief.  Smith v. White, 815 F.2d 1401,
1406-07 (11th Cir.), cert. denied, 484 U.S. 863 (1987).  Rosado v. Sec'y, Dep't of Corrs.,
No. 8:09-cv-02518-EAK-EAJ, 2010 U.S. Dist. LEXIS 86439, 2010 WL 2976886, at *4
(M.D. Fla. July 20, 2010) ("[V]ague, conclusory, speculative, or unsupported claims
cannot support an ineffective assistance of counsel claim.") (citing Tejada v. Dugger, 941
F.2d 1551, 1559 (11th Cir. 1991).

> An ambiguous or silent record is not sufficient to disprove the strong and
> continuing presumption [that counsel was competent]. Therefore, "where
> the record is incomplete or unclear about [counsel]'s actions, we will
> presume that he did what he should have done, and that he exercised
> reasonable professional judgment." Williams, 185 F.3d at 1228; see also
> Waters, 46 F.3d at 1516 (en banc)(noting that even though testimony at
> habeas evidentiary hearing was ambiguous, acts at trial indicate that
> counsel exercised sound professional judgment).

> The presumption about which we write here is not some presumption that
> the particular defense lawyer in reality focused on and, then, deliberately
> decided to do or not to do a specific act. Instead, the presumption to which
> we refer is the presumption that what the particular defense lawyer did at
> trial--for example, what witnesses he presented or did not present--were
> acts that some reasonable lawyer might do.

> The Supreme Court has instructed that there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 104 S. Ct. at 2065. This presumption is like the "presumption of innocence" in a criminal trial, in which "the defendant is not required to come forward with proof of his innocence once evidence of guilt is introduced to avoid a directed verdict of guilty." Black's Law Dictionary 823 (6th. ed.1991). This presumption of competence must be disproved by a petitioner. Petitioner continually bears the burden of persuasion on the constitutional issue of competence and further, (adding the prejudice element) on the issue of ineffective assistance of counsel. See Strickland, 104 S. Ct. at 2064 (stating that "defendant must show that counsel's performance was deficient" and that defendant must also show prejudice). Never does the government acquire the burden to show competence, even when some evidence to the contrary might be offered by the petitioner.

Chandler v. United States, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000).

To prove ineffective assistance of counsel, Petitioner must show that he was offered an 11(c)(1)(c) plea agreement by the government, that his counsel ignored his request to accept the plea agreement, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Petitioner, however, fails to carry his burden of proof, and his allegations do not satisfy the Strickland test.

Petitioner provides no basis for his contention that his attorney could have negotiated a more favorable plea agreement, and he fails to establish a reasonable probability that his sentence would have been different had counsel taken the actions Petitioner suggests he should have. See Strickland, 466 U.S. at 694. Petitioner offers no evidence, beyond his conclusory allegation, that the government offered him a Rule 1(c)(1)(c) agreement. In fact, his defense attorney avers that no such offer ever existed (doc. 220-2 at 1), and the record presented fails to suggest the existence of such an offer.

Furthermore, Petitioner has directed the court to nothing in the record that could support his supposition that the government would have agreed to a Rule 11(c)(1)(C) agreement that provided for a lesser sentence than that which was imposed or, more importantly, that the court would have accepted such an agreement had it been tendered.

FED. R. CRIM. P. 11(c)(5) authorizes the district court to reject a plea agreement containing provisions where the government has agreed that a specific sentence or sentencing range is appropriate, or that a particular provision of the sentencing guidelines does or does not apply. See FED. R. CRIM. P. 11(c)(5) & 11(c)(1)(C).  Petitioner alleges that the government offered him a plea agreement that would have afforded him a guideline sentencing range of 87 to 108 months, instead of the 240 months he ultimately received.  (Doc. 210 at 5).  It is Petitioner's contention that this offer was made prior to codefendants' proffering testimony as to the amount of drugs sold by Petitioner and that Petitioner ordered the murder of a confidential informant.  (Id. at 5-6).  Petitioner must show, and he does not, that the court would have approved such a plea bargain.[3]

---

[3]     Where hindsight may show that there were "golden opportunities" to make favorable plea deals,

> hindsight is not the proper perspective; the court "'must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."'" King, 595 F.3d at 852-53 (quoting Ruff, 77 F.3d at 268, in turn quoting Strickland, 466 U.S. at 690). Moreover, the Supreme Court has urged caution in reviewing the performance of counsel at the pretrial stage of the proceedings, when neither the prosecution nor the defense may know with much certainty what course the case may take. See Premo v. Moore, ___ U.S. ___ , 131 S. Ct. 733, 742, 178 L. Ed. 2d 649 (2011). Similarly, as the Supreme Court subsequently cautioned,

> > The inquiry then becomes how to define the duty and responsibilities of defense counsel in the plea bargain process. This is a difficult question. "The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial

McClenithan v. Duggar, 767 F.Supp. 257, 258 (M.D. Fla. 1991) (citing Zamora v. Wainwright, 610 F.Supp. 159, 161 (S.D. Fla. 1985); Zamora v. Wainwright, 637 F.Supp. 439, 443 (S.D. Fla. 1986)).  Indeed, it seems very unlikely that the court would have approved such a minimal sentence once the facts of the case, particularly the codefendants' testimony, surfaced.  Accordingly, Petitioner has demonstrated neither deficient performance nor prejudice, and his unsupported and conclusory allegation is insufficient to grant habeas relief.  See Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004) (holding that district court was not required to hold an evidentiary hearing based on § 2255 Petitioner's mere conclusory and unsupported allegations).

Claim 3.

Petitioner McReynolds alleges his trial counsel's failure to argue mitigating factors at sentencing or to require the government to satisfy its burden of proving Petitioner ordered the murder of an informant constituted a constitutional error of ineffective assistance of counsel.  (Doc. 210 at 8-9).  Petitioner, however, fails to satisfy the Strickland standard on these claims.

---

supervision." Premo v. Moore, 562 U.S.   ,   , 131 S. Ct. 733, 741, 178 L. Ed. 2d 649, 661 (2011). Bargaining is, by its nature, defined to a substantial degree by personal style. The alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process. Cf. ibid.

Frye, 566 U.S. at   , 2012 U.S. LEXIS 2321, 2012 WL 932020 at *8 (declining to define the duties of defense counsel in those respects in light of the circumstances of the case before the Court).

Johnson v. United States, 860 F. Supp. 2d 663, 779-780 (N.D. Iowa 2012).

During the sentencing hearing following the entry of a guilty plea to Count 11 of

the indictment, charging Petitioner with possession with intent to distribute crack

cocaine, Judge Steele made the following statement:

> All right.   Mr. McReynolds, I've considered the information
> contained in the Presentence Report as I'm required to in fashioning a
> sentence pursuant to Section 3553(a) of Title 18, which requires that I
> consider a number of factors, including the nature of the offense, your
> personal history and characteristics, your criminal history, and the other
> factors that are outlined in the statute, and I've done that. . . .
> When I look at everything in this case, it occurs to me that the
> sentence that I can impose because of the way this has unfolded, that being
> you being allowed to plead to one count of the indictment which caps the
> sentence at 240 months where the Guidelines in this case call for life in
> prison without parole, you have received the benefit of a plea bargain in
> this case which will tie my hands at a sentence of no more than 240
> months.
> I will tell you that based on what I see in the report, based on what
> I know about this case from handling other of the co-defendants'
> sentencing hearings as well as the information presented here today, quite
> frankly, you deserve more than 240 months, but that's the sentence that I -
> - that's the sentence that I - - the highest sentence I can impose.
> I will tell you that that is the sentence that I would impose
> regardless of what the guideline calculations would have developed in this
> case should you have been successful in your objections to the guidelines
> calculations as outlined in your lawyer's pleadings in this case.
> Regardless of any rulings on those objections, it is the
> determination of this Court that a sentence of 240 months is the sentence
> that I would impose.   It's the sentence that satisfies the sentencing
> objectives of Section 3553(a), and it is the sentence that I will impose
> today.

(Doc. 220-3 at 6-7).

Petitioner's belief that he was held responsible for the murder of the

confidential informant and that his sentence was adjusted upward for this crime is

belied by the record.   It is clear from the sentencing hearing transcript that

Petitioner was sentenced within the penalty range afforded by his signed plea

bargain.   (See Doc. 220-3 at 6; Doc. 142 at 3).   Specifically, Petitioner was

sentenced to 240 months in prison for pleading guilty to selling more than 8.4 kilograms of crack cocaine. (Doc. 142 at 11). Therefore, Petitioner's contention that his attorney should have insisted on the government proving a link between Petitioner and any murder is frivolous.[4]

Furthermore, the Court finds Petitioner's allegations of trial counsel's failure to present mitigating factors at sentencing and failure to object to the government's characterization of Petitioner as a career drug dealer are frivolous. Petitioner argues that the conviction at hand was his only felony drug conviction, and, therefore, "the court could have been led to believe that [Petitioner] was a working citizen who sold an ounce of crack based on an economic hardship crime" and not a career drug dealer. (Doc. 210 at 9). However, the record clearly contradicts this contention; in fact, Petitioner refutes it himself.

The Factual Resume attached to the Plea Agreement signed by Petitioner states:

> The defendant has been selling crack cocaine, cocaine and marijuana in Selma since at least 1995. The defendant agrees that over the course of the charged conspiracy in this case the defendant conspired to distribute in excess of 8.4 kilograms of crack cocaine and the defendant expressly agrees to be held accountable for this amount of crack cocaine for purposes of relevant conduct in this case. The defendant also agrees that he was an organizer and leader of criminal activity involving 5 or more participants and was otherwise extensive in accordance with U.S.S.G. § 3B1.1(a).

---

[4]      Throughout the sentencing hearing, despite withdrawing objections to the presentencing report, Petitioner's counsel maintained that "Mr. McReynolds does specifically deny any involvement in any homicide as related in the Presentence Report in the statements of other individuals," and "Mr. McReynolds strongly maintains his innocence regarding any violent crime in Selma, including murders." (Doc. 220-3 at 4, 5).

(Doc. 142 at 11).  Petitioner admitted to selling drugs since 1995 and "advised [the probation officer compiling the PSR] that he has never acquired any legitimate employment his entire life."  (Doc. 174 at 17).  Therefore, the Court finds no reasonable attorney would have objected to the government's contention that Petitioner was a career drug dealer based on Petitioner's admittance to being a career dealer in his factual resume.

Additionally, no prejudiced has been proven by Petitioner to satisfy the second Strickland prong.  Judge Steele was clear that he would have imposed the exact same 240-month sentence, the maximum allowed, despite any mitigating factors or possible successful objections to the PSR.  (Doc. 220-3 at 6-7 ("I will tell you that that is the sentence that I would impose regardless of what the guideline calculations would have developed in this case should you have been successful in your objections to the guidelines calculations as outlined in your lawyer's pleadings in this case.").  Judges are allowed broad discretion when fashioning sentences.  See Apprendi v. New Jersey, 530 U.S. 466 at 481, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute").  Petitioner's sentence was confined to the statutory range outlined in his plea agreement; furthermore, given that Petitioner admitted to selling drugs for over 14 years and being a leader in a conspiracy to sell illegal substances, there is reasonable and warranted justification for a maximum prison sentence.  Thus, Petitioner's Claim 3 is due to be denied habeas relief.

Claim 4.

Petitioner alleges a violation of U.S. v. Alleyne, U.S. . 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), by the Court in fashioning his sentence. (Doc. 210 at 13-14). Petitioner asserts that the government proved only that he had distributed 28 grams of crack cocaine. However, Petitioner's sentence was based on holding him responsible for conspiring to distribute a quantity of 8.4 kilograms of crack cocaine, despite that the government never proved his possession of this amount to a factfinder. (Id.). Petitioner argues this increase in quantity of drugs used to enhance his sentence is analogous to that in Alleyne.

In Alleyne, the defendant was convicted of using or carrying a firearm during and in relation to a crime of violence. 133 S. Ct. at 2155. The conviction carried a minimum five-year sentence but was enhanced to a seven-year sentence if the weapon was "brandished" during the crime. Id. The district court sentenced the defendant accounting for the brandishing element based on judicial factfinding, as the jury did not find "brandishing" beyond a reasonable doubt. Id. The Supreme Court held that because brandishing increased the penalty to which defendant was subject, that brandishing was an element of the offense which must be found by the jury beyond a reasonable doubt. Id. at 2163.

Petitioner's situation is distinguishable from Alleyne. Most noteworthy is the fact that Petitioner pleaded guilty to the charge of distributing crack cocaine and, moreover, accepted being held responsible for conspiring to distribute a quantity of drugs in excess of 8.4 kilograms. (See 142 at 11). Petitioner's factual resume states:

> The defendant agrees that over the course of the charged conspiracy in this case the defendant conspired to distribute in excess of 8.4 kilograms of

> crack cocaine and the defendant expressly agrees to be held accountable for this amount of crack cocaine for purposes of relevant conduct in this case.  The defendant also agrees that he was an organizer and leader of criminal activity involving 5 or more participants and was otherwise extensive in accordance with U.S.S.G. § 3B1.1(a).

(Id.).  Any fact admitted to by a defendant need not be proven to a factfinder, as in the current case.  United States v. Heard, 561 Fed. App'x 873, 876 ("In the context of a guilty plea, such an element [as the quantity of drugs] may be established when the defendant admits the facts in question through a guilty plea or otherwise.") (citing United States v. Booker, 543 U.S. 220, 244, 125 S. Ct. 738, 756, 160 L. Ed. 2d 621, 650 (2005) (Apprendi and Alleyne stand for the proposition that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.")).  Therefore, Petitioner's Claim 4 lacks bases in law or fact, as he admitted in his plea agreement to conspiring to distribute an excess of 8.4 kilograms of crack cocaine.

Furthermore, any facts that were utilized by Judge Steele in calculating Petitioner's sentence were constitutionally acceptable.  The Supreme Court in Alleyne was clear to announce that its holding did not include fact situations like Petitioner's where judicial discretion was used to determine a defendant's sentence.

> We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment. See, e.g., Dillon v. United States, 560 U.S. 817, ___, 130 S. Ct. 2683, 2692, 177 L. Ed. 2d 271 (2010) ("[W]ithin established limits[,] . . . the exercise of [sentencing] discretion does not contravene the Sixth Amendment even if it is informed by judge-found facts" (emphasis deleted and internal quotation marks omitted)); Apprendi, 530 U.S., at 481, 120 S. Ct. 2348, 147 L. Ed. 2d 435 ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration

22

various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute"). This position has firm historical roots as well. As <u>Bishop</u> explained:

"[W]ithin the limits of any discretion as to the punishment which the law may have allowed, the judge, when he pronounces sentence, may suffer his discretion to be influenced by matter shown in aggravation or mitigation, not covered by the allegations of the indictment." <u>Bishop</u> §85, at 54.

"[E]stablishing what punishment is available by law and setting a specific punishment within the bounds that the law has prescribed are two different things." <u>Apprendi</u>, <u>supra</u>, at 519, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (Thomas, J., concurring). Our decision today is wholly consistent with the broad discretion of judges to select a sentence within the range authorized by law.

<u>Alleyne v. United States</u>, 133 S. Ct. 2151, 2163, 186 L. Ed. 2d 314, 330 (2013). Therefore, the imposed sentence of 240 months, the maximum penalty allowed by Petitioner's plea agreement, was not given in error as alleged by Petitioner because Petitioner admitted to the quantity of drugs that established his guideline range, and it is acceptable for trial judges to use their discretion to fashion sentences.

  <u>Claim 5 and Claim 6.</u>

  McReynolds claims the "District Court erred when it used information [obtained from codefendants' sentencing hearings] to fashion his sentence without providing the information to him prior to sentencing" (doc. 227 at 3) and that his attorney provided ineffective assistant of counsel by failing to object to the use of such information. (<u>Id</u>.). Claims 5 and 6 are derived from language used by Judge Steele at McReynolds' sentencing hearing. At the hearing, Judge Steele stated, *inter alia*:

   I will tell you that based on what I see in the report, based on what I know about this case from handling other of the co-defendants' sentencing hearings as well as the information presented here today, quite

frankly, you deserve more than 240 months, but that's the sentence that I -
- that's the sentence that I - - the highest sentence I can impose.

I will tell you that that is the sentence that I would impose
regardless of what the guideline calculations would have developed in this
case should you have been successful in your objections to the guidelines
calculations as outlined in your lawyer's pleadings in this case.

(Doc. 220-3 at 6-7).

The Court finds, as explained below, Claim 5 is procedurally barred and Claim 6

lacks merit.

A habeas petitioner is generally barred from raising a claim in a § 2255 motion

that he did not raise on direct appeal. The Eleventh Circuit Court of Appeals has

summarized this principle as follows:

> Generally, if a challenge to a conviction or sentence is not made on direct
> appeal, it will be procedurally barred in a § 2255 challenge. Mills v.
> United States, 36 F.3d 1052, 1055 (11th Cir. 1994). A defendant cannot
> overcome this procedural bar unless he can demonstrate a cause for this
> default and show actual prejudice suffered as a result of this alleged error.
> Id. In the alternative, a defendant can also overcome this procedural bar
> created by the failure to appeal if he could show a fundamental
> miscarriage of justice; 'in an extraordinary case, where a constitutional
> violation has probably resulted in the conviction of one who is actually
> innocent, a federal habeas court may grant the writ even in the absence of
> showing of cause for the procedural default." Id. (quoting Murray v.
> Carrier, 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L.Ed.2d. 397 (1986)).

United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005).  "[T]he concern with

finality served by the limitation on collateral attack has special force with respect to

convictions based on guilty pleas," as is the case here.  United States v. Timmreck, 441

U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979). Furthermore, McReynolds

acknowledged his understanding that he waived his right to collaterally attack his

sentence in his acceptance of the government offered plea agreement.  (Doc. 142 at 1-3).

McReynolds was then questioned by Judge Steele and confirmed at the guilty plea

hearing that he had knowingly, intelligently and voluntarily entered into a waiver of his right to seek collateral relief except in three instances: if the sentence imposed was in excess of the statutory maximum or would constitute an upward departure or variance from the sentencing guideline range or for claims of ineffective assistance of counsel. (Doc. 220-1 at 11).  Since none of those situations applies to Claim 5 and McReynolds does not dispute the validity of his plea agreement, his habeas petition on this claim is barred, and he has failed to establish any reason to excuse the bar.  As such, habeas relief as to Claim 5 should be denied.

Petitioner's Claim 6, of ineffective assistance of counsel during the sentencing phase is without merit as well.  Petitioner claims that his counsel was ineffective for failing to object to the district court's usage of information learned through codefendants to fashion his sentence.  (Doc. 227 at 3).[5]  As addressed in more detail above, in order for Petitioner to establish a claim of ineffective assistance of counsel, he must prove (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. The Strickland standard for evaluating claims of ineffective assistance of counsel was held applicable to the entry of guilty pleas in Hill v. Lockhart, 474 U.S. at 58, 106 S. Ct. at 370.

Additionally, as explained above, in considering the framework established by Strickland, courts "must avoid second-guessing counsel's performance[,]" must avoid

_____

[5] McReynolds filed a motion to supplement his § 2255 motion with affidavits to support this claim.  (Doc. 243).   The motion to supplement (Doc. 243) is **GRANTED**.  However, the additional evidence and argument does not alter the undersigned's recommendation as to this claim.

"using 'the distorting effects of hindsight,' and must evaluate the reasonableness of counsel's performance 'from counsel's perspective at the time.'" Chandler, *supra*, 218 F.3d at 1314 & 1316 (citation omitted).  Further, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'"  Id. at 1314 (citations omitted).  Therefore, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'"  Id. (citation omitted).

Contrary to McReynolds' allegation, the Court finds counsel acted reasonably in not objecting to the imposed sentence.  Counsel was well aware that judges are given broad discretion in fashioning sentences, see Williams v. New York, 337 U.S. 241, 246, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949) ("[B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law"), and counsel knew that judges may exercise sentencing discretion through "an inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come."  United States v. Tucker, 404 U.S. 443, 446, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972).   Additionally, counsel was aware that the imposed sentence was with the guideline range projected in the executed plea agreement (doc. 142 at 1-3), and that McReynolds acknowledged to Judge Steele at his guilty plea hearing that he fully understood the possibility of serving 20 years by pleading guilty to count 11.  (Doc. 220-1 at 7-10).  Based on the reasonableness of the

sentence, given the entirety of McReynolds factual resume and presentence report, and the lack of evidence produced indicating other counsel would have objected in the same or similar situation, the Court finds that counsel's representation was objectively reasonable.

Furthermore, and more importantly, it is clear from *dicta*, Judge Steele was compelled to impose the maximum sentence based on the totality of McReynolds' case – not just information he obtained from codefendants' sentencing hearings. Obviously, any objection raised by counsel would have been futile given Judge Steele's expressed words and the voluminous facts contained in McReynolds' factual resume and presentencing report that easily supported the imposition of a maximum guideline range sentence. See Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (holding that "[c]ounsel was not ineffective for failing to raise these issues because they clearly lack merit"); Meeks v. Moore, 216 F.3d 951, 968 (11th Cir. 2000) (affirming district court's assertion that counsel has no duty to bring forth non-meritorious motions); Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir. 1995) ("[C]ounsel need not pursue constitutional claims which he reasonably believes to be of questionable merit."); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (applying Strickland and holding that "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (crediting as professionally reasonable counsel's decision not to file what he believed to be a meritless motion); Ladd v. Jones, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them."). Detrimentally lacking from McReynolds' complaint is any evidence or even allegation that the result of the proceeding, his sentencing, would

have been different had counsel objected to Judge Steele's comment that he had learned information about McReynolds from the sentencing hearings of codefendants. Strickland, 466 U.S. at 687. And based on the plethora of facts to justify the imposed sentence, McReynolds fails to prove that he was prejudiced by counsel not objecting to the judge's remarks about information gained from codefendants. Butcher v. United States, 368 F.3d 1290, 1294, 95 F. App'x 1290 (11th Cir. 2004) (Petitioner "must affirmatively prove prejudice" to succeed on an ineffective assistance of counsel claim.). McReynolds fails to demonstrate reasonable probability that his sentence would have been different had counsel objected to the judge's comments; thus, McReynolds has failed to carry his burden of proving the necessary elements of his ineffective assistance of counsel claim. Therefore, habeas relief for Claim 6 should be denied.

Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned **RECOMMENDS** that a Certificate of Appealability be **DENIED** for McReynolds's § 2255 motion. 18 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may only issue where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).

Where, as here, the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also Miller-El*, 537 U.S. at 336 ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether  (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)).).  "A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part."  *Miller-El*, 537 U.S. at 338 (quotations omitted).  The undersigned finds that reasonable jurists could not debate whether McReynolds's § 2255 motion to vacate should be resolved in a different manner or that any of the remaining issues presented is adequate to deserve encouragement to proceed further.  Accordingly, McReynolds is not entitled to a Certificate of Appealability as to these claims.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by petitioner, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.  *See, e.g., Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011)[6]; *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report &*

---

[6] It should be noted that in that proceeding, the Eleventh Circuit (Judge Hull) also denied the petitioner's motion for certificate of appealability on October 11, 2011. (*See* Doc. 14 in CA-11-0165-WS-C.)

*recommendation adopted sub nom. Griffin v. Butterworth*, 2010 W: 3943699 (N.D. Oct. 5, 2010).

Appeal *In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."  28 U.S.C.A. § 1915(a)(3).  A district court's finding "that an appeal would not be in good faith because no certificate of appealability had been issued . . . is not enough to explain why the appeal on the merits would not be in good faith, because the standard governing the issuance of a certificate of appealability is not the same as the standard for determining whether an appeal is in good faith. It is more demanding . . . [T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit."  *Walker v. O'Brien*, 216 F.3d 626, 631-32 (7th Cir. 2000).  *See also Weaver v. Patterson*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568218, at *7 (S.D. Ala. June 19, 2012) (Nelson, M.J.), *report and recommendation adopted*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568093 (S.D. Ala. July 3, 2012) (Steele, C.J.) ("An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); *see* Fed. R. App. P. 24(a)(3)(A); *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000) (concluding that 'good faith' is 'an objective concept' and that 'not taken in good faith' is 'a synonym for frivolous'); *DeSantis v. United Techs, Corp.*, 15 F. Supp. 2d 1285, 1288–89 (M.D. Fla. 1998) (stating that good faith 'must be judged by an objective, not a subjective, standard' and that an appellant 'demonstrates good faith when he seeks appellate review of any issue that is not frivolous').  An appeal filed *in forma pauperis* is frivolous if 'it appears that the Plaintiff has little to no chance of success,'

meaning that the 'factual allegations are clearly baseless or that the legal theories are indisputably meritless.' *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993).").  *But see, e.g., United States v. McCray*, No. 4:07CR20-RH, 2012 WL 1155471, at *2 (N.D. Fla. Apr. 5, 2012) ("Because the defendant has not obtained—and is not entitled to—a certificate of appealability, any appeal by the defendant will not be taken in good faith.  I certify under Federal Rule of Appellate Procedure 24(a) that any appeal will not be taken in good faith and that the defendant is not otherwise entitled to proceed *in forma pauperis* on appeal.").

In light of the above-stated reasoning, the undersigned **RECOMMENDS** the Court certify that any appeal by McReynolds in this action would be without merit and therefore not taken in good faith and, accordingly, find that McReynolds is not entitled to appeal *in forma pauperis*.

## IV.    Conclusion.

For the reasons stated above, it is the recommendation of the undersigned Magistrate Judge that McReynolds' § 2255 motion be **DENIED**.  It is further recommended that any motion for a Certificate of Appealability or for permission to appeal *in forma pauperis* be **DENIED**.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); SD ALA LR 72.4. The parties should note that under Eleventh Circuit Rule 3-1,

"[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this the 30th day of June 2015.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**
